## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jermaine Carter, | Case No. 19-cv-1403 (JRT/LIB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| R. Marques, | |
| Defendant. | |

This matter comes before the undersigned United States Magistrate Judge pursuant to a general referral in accordance with the provisions of 28 U.S.C. § 636 and Local Rule 72.1, as well as, upon Petitioner Jermaine Carter's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. [Docket No. 1].

For the reasons set forth herein, the Court recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED**, and this action be **DISMISSED** without prejudice.

**I.    Background**

On November 21, 2008, Petitioner Jermaine Carter pled guilty to a single count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 841(b)(1)(A) (See, Case No. 08-cr-00042 (JAJ/TJS) (S.D. Iowa) [Docket No. 39-2]). On April 24, 2009, Petitioner was sentenced to a term of natural life imprisonment, with the caveat that if released he would be subject to ten years of supervised release. (See, Id. [Docket No. 49]). On November 23, 2016, Petitioner received an executive grant of clemency that converted his term of natural life to a term of 180 months imprisonment to be followed by 10 years of supervised release (See Id. [Docket No. 58 at 2]).

Petitioner is currently incarcerated at the Federal Correctional Institution in Sandstone, Minnesota (hereinafter "FCI Sandstone"). (Petition [Docket No. 1]). He has a projected release

date of June 28, 2020, via the current good time conduct calculation. (See, https://www.bop.gov/inmateloc and searching Petitioner's Prison Id. No. 08718-030).

## II. Discussion

Petitioner argues that the Bureau of Prisons (hereinafter "BOP") should immediately recalculate his good conduct credit in accordance with the First Step Act of 2018's amendments to 18 U.S.C. § 3264(b) affecting the calculation of good time credits to expedite his release date. (See, Petition [Docket No. 1]).

### A. Exhaustion of Administrative Remedies

It is well established that a federal prisoner seeking relief through a writ of habeas corpus pursuant to 28 U.S.C. § 2241 must first exhaust the administrative remedies available to him. See, Mathena v. United States, 577 F.3d 943, 946 (8th Cir. 2009) ("A prisoner may bring a habeas action challenging the BOP's execution of his sentence only if he first presents his claim to the BOP."); Willis v. Ciccone, 506 F.2d 1011, 1015 (8th Cir. 1974) ("If grievance procedures provide an adequate means for impartial review, then a federal prisoner must exhaust available administrative remedies within the correctional system prior to seeking extraordinary relief in federal court."). In the present case, the Petition indicates that Petitioner has not exhaust the administrative remedies available to him. (Petition, [Docket No. 1], at 2–3).

The exhaustion requirement is not jurisdictional. See, Lueth v. Beach, 498 F.3d 795, 797 n.3 (8th Cir. 2007). It is, however, generally enforced absent circumstances which justify an exception. See, e.g., Masri v. Watson, No. 16-cv-4132 (MJD/FLN), 2017 WL 1131891 (D. Minn. Feb. 17, 2017) (denying habeas petition for failure to exhaust all available administrative remedies); Knox v. United States, No. 16-cv-879 (WMW/KMM), 2016 WL 6022940 (D. Minn. Oct. 13, 2016) (same); Aguilar v. United States, No. 15-cv-487 (SRN/JSM), 2015 WL 5719166,

at *2 (D. Minn. Sept. 29, 2015) (noting that "habeas petitioners can be excused from the exhaustion requirement if proceeding through the administrative remedy process would undoubtedly be an exercise in futility that could serve no useful purpose"). The Eighth Circuit has held that a Federal District Court may err by considering the merits of a petition for a writ of habeas corpus when the petitioner "failed to demonstrate he had" properly exhausted his administrative remedies prior to seeking habeas corpus relief. See, United States v. Thompson, 297 F. App'x 561, 562 (8th Cir. 2008).

There are exceptions, however, to the exhaustion requirement for habeas petitioners, including when requiring a habeas petitioner to exhaust all available administrative remedies would be futile and serve no useful purpose. See, Aguilar, 2015 WL 5719166, at *2. Courts have also excused the exhaustion requirement when the issues raised in the action are time-sensitive and may become moot without expeditious judicial resolution. See, Simon v. L. LaRiva, No. 16-cv-146 (ADM/TNL), 2016 WL 1626819, at *3–4 (D. Minn. March 10, 2016).

In the present case, the undersigned is cognizant that Petitioner contends that he may be improperly denied an earlier release date via good time credit if the present matter is not resolved in a timely manner. The time-sensitive nature of Petitioner's claim, combined with the relative ease of resolution, persuades the undersigned to recommend that the Court excuse the exhaustion requirement and address Petitioner's claims.

### B. First Step Act

Petitioner argues that the Bureau of Prisons (hereinafter "BOP") should immediately recalculate his good conduct credit in accordance with the First Step Act's amendments to § 18 U.S.C. 3264(b) affecting the calculation of good time credits to expedite his release date. (See, Petition, [Docket No. 1], at 6–7). Petitioner offers two main grounds in support of his argument:

(1) that the delayed implementation of July 2019 does not apply to the good time calculation and only applies to another provision of the First Step Act, and (2) that the good time credit issue is based on total time of imprisonment, not on time served. (Memorandum [Docket No. 2], at 7–13). He argues that both main points are supported by the statutory text, as well as, the legislative intent of the First Step Act. (Id.). Although he appears to present these as separate grounds for relief, each of Petitioner's arguments is predicated on the idea that the BOP is misinterpreting the First Step Act to include a provision which permits a delay of the Act's implementation. (See, Id. at 7–14).

The First Step Act, Public Law 115-391, was enacted on December 21, 2018, to amend 18 U.S.C. § 3264(b). Before said amendment, 18 U.S.C. § 3264(b), as interpreted by the BOP, provided that 47 days of good conduct time be credited for each year of <u>imprisonment served</u>, <u>not</u> for the term of <u>imprisonment imposed</u> by the Court. See, Barber v. Thomas, 560 U.S. 474, 477–80 (2010) (explaining and finding permissive the BOP's calculation method). Pursuant to that calculation method, as upheld by the Supreme Court of the United States, prisoners received 47 days of good time credit per year of actual imprisonment. See, Id. at 479.

Section 102(b)(1) of the First Step Act amends 18 U.S.C. § 3624(b) to change the manner in which good conduct credits are calculated by increasing the maximum allowable good conduct time from 47 to 54 days per year. Specifically, the Act will permit federal inmates to earn 54 days of good conduct time for each year of the sentence imposed by the Court—as opposed to—each year served. However, despite Petitioner's assertions to the contrary, this provision of Section 102(b)(1) has not yet taken effect.

Section 102(b)(2) of the Act provides that the amendments made in subsection 102(b), such as the amendment to the manner in which good conduct credits are calculated, are to "take effect

beginning on the date that the Attorney General completes and releases the risk and needs assessment system" as required by Section 101(a) of the Act. Pursuant to Section 101(a) of the Act, the Attorney General must "develop and release" the "risk and needs assessment system" by no "later than 210 days after the date of enactment of" the Act, or July 18, 2019.

It is well settled law, that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253–54 (1992). "When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." Id. at 254 (quotations omitted) (quoting Rubin v. United States, 449 U.S. 424, 430 (1981)). Pursuant to these longstanding principals, Courts "must enforce plain and unambiguous statutory language according to its terms." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 251 (2010).

As previously discussed, the First Step Act, clearly and unambiguously, provides that it does not take immediate effect. Rather, the language of the Act plainly provides that Section 102(b) only takes "effect beginning on the date that the Attorney General completes and releases the risk and needs assessment system" as required by Section 101(a) of the Act. And pursuant to Section 101(a) of the Act, the Attorney General must "develop and release" the "risk and needs assessment system" by no "later than 210 days after the date of enactment of" the Act, or July 18, 2019.

Accordingly, Section 102(b)'s amended of 18 U.S.C. § 3264(b)(1) does not go into effect until July 18, 2019. Although the amendments through the First Step Act are relatively new, other Courts have considered the same argument raised here by Petitioner, and those Courts, including Courts in this District, have reached the same conclusion as this Court now reaches, i.e., Section 102(b) does not go into effect until July 18, 2019. See, e.g., Robertson v. R. Marques, No. 19-cv-1009 (WMW/SER), Report and Recommendation, [Docket No. 13], at 2–5 (D. Minn. May 8,

2019) (collecting cases); Jarif v. Barnes, No. 19-cv-456 (JNE/DTS), Report and Recommendation [Docket No. 9] (D. Minn. Apr. 12, 2019) adopted by Order [Docket No. 10] (D. Minn. May 13, 2019); Critten v. White, No. 1:19-cv-669, 2019 WL 1866501, at *2 (M.D. Pa. Apr. 29, 2019); Matthews v. Williams, No. 4:19-cv-519, 2019 WL 1639776, at *1–2 (N.D. Ohio Apr. 16, 2019 (collecting cases); Oscar Molina v. Underwood, No. 3:19-cv-641, 2019 WL 1533444, at *1–2 (N.D. Tex. Mar. 19, 2019) report and recommendation adopted by 2019 WL 1531853 (N.D. Tex. Apr. 9, 2019); Rizzolo v. Puentes, No. 1:19-cv-290 (SKO/HC), 2019 WL 1229772, at *2 (E.D. Cal. Mar. 15, 2019); Schmutzler v. Quintana, No. 5:19-cv-46 (DCR), 2019 WL 727794, at *2 (E.D. Ky. Feb. 20, 2019). "Because the amendments to § 3624(b)(1) are not [yet] in effect, the BOP has no statutory authority to recalculate [Petitioner's] good time credit until the relevant provision of the First Step Act takes effect." Robertson v. R. Marques, No. 19-cv-1009 (WMW/SER), Report and Recommendation, [Docket No. 13], at 4 (D. Minn. May 8, 2019) (citing Christopher v. Wilson, 2019 WL 1745968, at *2 (N.D. Tex. Apr. 18, 2019); Matthews v. Williams, 2019 WL 1639776, at *2 (N.D. Ohio Apr. 16, 2019); Roy v. United States Bureau of Prisons, 2019 WL 1441622, at *2 (E.D. Wash. Apr. 1, 2019)).

Petitioner's claim that the BOP must immediately recalculate his good conduct credit is without merit. At the present time, Petitioner's request for a recalculation of his good conduct time is simply premature.

Petitioner cannot presently request that the BOP recalculate his good conduct credit because the amendment to 18 U.S.C. § 3264(b)(1) which would allow the BOP to do so has not yet taken affect. After the relevant amendment takes effect on July 18, 2019, Petitioner may then request the BOP recalculate his good conduct credit; however, that request should first be made to the BOP through the appropriate administrative process.

6

### III. Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. The Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED**; and

2. This action be **DISMISSED without prejudice**.

Dated: July 1, 2019               s/Leo I. Brisbois
                                  Leo I. Brisbois
                                  U.S. MAGISTRATE JUDGE

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).